1 Robert P. Cogan (SBN 225193)
2 rcogan@continuumlaw.com
  Continuum Law
3 402 W Broadway, Suite 400
  San Diego, California 92101
4 Tel: (619) 338-0400
5 Fax: (619) 259-5200

6
  *Attorney for Plaintiff*
7 *Bluejay Technologies Limited*

8
# UNITED STATES DISTRICT COURT
9
# CENTRAL DISTRICT OF CALIFORNIA
10

11 | BLUEJAY TECHNOLOGIES LIMITED | Case No.
12 |                              |
13 | Plaintiff, | **COMPLAINT FOR PATENT INFRINGEMENT**
14 | v. |
15 | SPOTIFY USA INC. | **DEMAND FOR JURY TRIAL**
16 | Defendant |

Plaintiff Bluejay Technologies Limited ("Bluejay" or "Plaintiff"), by and through its attorney, files this Complaint for Patent Infringement against Defendant Spotify USA Inc. ("Spotify" or "Defendant") and alleges as follows:

## I. NATURE OF THE ACTION

1. This is an action for patent infringement of U.S. Patent No. 11,627,344 (the "344 Patent" or the "Asserted Patent"). This action arises under the patent laws of the United States, Title 35, United States Code, including 35 U.S.C. § 271.

## II. THE PARTIES

2. Plaintiff Bluejay is a British Company with its principal place of business at Unit 281, 28 Old Brompton Road, London, England, SW7 3SS.

3. Defendant Spotify USA Inc. is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 150 Greenwich St. Fl. 62, New York, NY 10007-2474.

4. Defendant engages in providing streaming services to subscribers worldwide including simulated live broadcasting of a programmed audio music playlist session from a host device to multiple recipient devices over an Internet network. This service provides, in effect, a global DJ function. A software application is executed on the host device, the software application being configured to operate on the host device to program, transmit and receive the programmed audio music playlist session, programming the programmed audio music playlist session from the host device.

## III. JURISDICTION AND VENUE

5. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C § 1 et seq., including in particular 35 U.S.C. § 271. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6. This Court has personal jurisdiction over Defendant, and venue is proper in this District pursuant to 28 U.S.C. § 1400(b). On information and belief,

(1) Defendant has a regular and established place of business in this District at 555 Mateo St., Los Angeles, CA 90013; (2) it is a regular and established place of business; and (3) it is the place of the Defendant.

7. Defendant regularly transacts business in this District, including by offering for sale and selling infringing services.

## IV. FACTUAL BACKGROUND

8. Bluejay Technologies Limited was formed in late 2014 by Peter and Sam Shore in the UK to develop a global DJ application.

9. Research showed that young people wanted to discover new music. At that time, new music was curated, i.e., suggested, by algorithmically generated playlists provided by streaming services. Young people preferred to have playlists curated by a source with similar tastes, such as friends. This would result in playlists that would provide them with new music that they would enjoy.

10. At that time, no streaming service distributed music in a digital form so subscribers could listen at virtually the same time while physically separate. Bluejay addressed a need that was not recognized by others.

11. Bluejay built a personalized digital radio system with a social media platform wrapped around it. This system allowed one person, a host, to select a playlist that could be shared and listened to by a group of subscribers. This group generally comprised people who wanted a host to curate selections for them.

12. In 2015, Bluejay designed and defined a system in which a host and listeners downloaded the same application to their mobile phones. The host chose and started a playlist of at least ten songs and invited friends worldwide through a link or any other communications channel, to join by clicking on the link, allowing all of them to listen at the same time as the host acted as DJ.

13. Bluejay launched their streaming service and became an Internet broadcaster and was licensed by the PRS and the PPL in the UK, the collection bodies for this type of service.

14. To seek capital, Bluejay began a series of B2B discussions with streaming companies and music labels.

15. Bluejay built an interface to both Spotify and Soundcloud, to show those businesses how integrating Bluejay's DJ feature would work.

16. After communication with Spotify, Spotify wrote to Bluejay in September 2018, "Peter, Great to meet you and the rest of the team as well. I know the folks on our side found the call incredibly productive and informative. We are still in the early planning stages of thinking about this capability. As things progress over the next few months I'll reach back out to provide an update and make sure we get an NDA in place to further the conversation."

17. Bluejay had provided detailed PowerPoint presentations at the meeting, showing how the application worked, how it looked and how it could satisfy licensing obligations.

18. Bluejay heard nothing more from Spotify, but knew Spotify was interested in the technology because it kept referring to it or similar engagement features, in public statements and media.

19. In May 2020 Spotify launched its feature called "Remote Group Session" which was available only to Premium customers, which incorporated Bluejay's intellectual property.

20. On September 26, 2023, Spotify launched Jam. Jam provided a DJ function which infringed Bluejay's concept of short term radio broadcasting from a host to a number of recipients.

## V. THE ASSERTED PATENT

21. On April 11, 2023 the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 11,627,344 (the "344 Patent") entitled "System for Streaming," to Leonard Peter Shore, Samuel Jordan Shore, and Marty John Gauvin. A copy of the 344 Patent is attached to the Complaint as Exhibit A.

22. Bluejay is the owner of all right, title, and interest in and to the 344 Patent.

23. The 344 Patent is directed to a method of simulated live broadcasting a programmed audio music playlist session from a host device to multiple recipient devices over an Internet network using a software application in which a programmed audio music playlist session, programmed only on the host device, is transmitted from the host device to recipient devices, the audio music playlist session being provided by selecting a sequence of music content items stored at a plurality of content stores and identifying Internet locations of the music content items within a plurality of content stores, the recipient devices executing the programmed audio music playlist session by initiating the transmission of the content items described by the programmed audio music playlist session from the plurality of content stores to a streaming server to the recipient devices.

24. The host enables the simulated live broadcasting by providing the recipient devices with a list from which the recipient devices may access and play content from a number of content stores.

25. The written description of the 344 Patent describes, in technical detail, each of the limitations in the claims, allowing a person of skill in the art to understand what those limitations cover, and therefore what was claimed, and also understand how the non-conventional and non-generic ordered combination of the elements of the claims differ markedly from what had been performed in the industry prior to the inventions of the 344 Patent. As of the time of filing, the function of providing a simulated broadcast was unique.

26. The claims of the 344 Patent describe a technological solution to the problem of how to select a playlist and make it shareable in a live, interactive method.

## VI. THE INFRINGING SERVICES

27. On information and belief, in May 2020, Spotify launched a feature called Group Session which it made available to premium subscribers.

28. On information and belief, Spotify's remote Group Session feature allows up to five premium users to listen to music or podcasts remotely together. To join a remote Group Session, participants can receive an invitation via SMS, messaging apps, or social media and open the link or scan the Spotify code. The Spotify app will automatically launch and prompt the user to join the session, whereby the users may listen to a simulated broadcast.

29. On information and belief, on September 26, 2023, Spotify launched Jam and dropped Group Session.

30. On information and belief, Jam provides simultaneous searching for users in a session in which a premium customer may restart the session and any user may join the session. This service was promoted as a way to engage, share and discover music with friends.

31. On information and belief, Jam utilizes Bluejay's patented technology in providing services in Group Session and Jam(the Accused Services) including providing a shared playlist where playlist management is limited to the host.

## VII. COUNT I - INFRINGEMENT OF U.S. PATENT NO. 11,627,344

32. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 31 as though fully set forth herein.

33. Upon information and belief, Spotify has directly infringed at least Claims 6, 7, 8, 9, 10, 11, 12, 13 and 14 of the 344 Patent in violation of 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by performing in the United States without authority each and every step of the claims by using methods that embody the patented invention, namely, the infringing services operating over

a network wherein multiple devices interact at the direction of Defendant's program.

34. Upon information and belief, the structure and operation of Spotify's apparatus and Accused Services are represented by United States Patent No. 11,570,518 to Erik Broberg (Broberg I) and United States Patent No. 11,283,846 to Erik Broberg (Broberg II). These patents are owned by Spotify AB, Stockholm, Sweden. Spotify also holds many other patents describing their systems and methods. A copy of Broberg I is attached to this complaint as Exhibit B. A copy of Broberg II is attached to this complaint as Exhibit C.

35. The Accused Services perform the method of claim 6 because they provide a method of simulated live broadcasting of a programmed audio music playlist session from a host device to multiple recipient devices over an Internet network utilizing the limitations recited in claim 6.

36. The Accused Services meet the limitation of executing the software application on the host device in a host mode, the software application configured to, only on the host device, program, transmit and receive the programmed audio music playlist session. The premium user in the Accused Services acts as the host and selects a playlist. The recipient devices receive the playlist and access media from Spotify content sources. Spotify includes this element as described at Broberg I, Columns 13-14.

37. The Accused Services meet the limitation of programming the programmed audio music playlist session from the host device by selecting a sequence of music content items stored at a plurality of content stores which are described by portions of the programmed audio music playlist session respectively. This is recognized in the trade press in Music Business World magazine, *Spotify Launches Jam, A Real- Time Collaborative Playlist Feature For Up To 32 Users*, https://www.musicbusinessworldwide.com/regions/eufhjrl1swidiw/t,1usicbusinessworldwide.com/author/mb\\. September 27, 2023. (hereinafter MBW). MBW,

line 44 identifies that playlist management is limited to the host. A copy of MBW is attached to this complaint as Exhibit D. Also, Broberg I, column 1, says that a master device controls playback of the media content in a shared playback session.

38. The Accused Services meet the limitation of identifying Internet locations of the music content items within the plurality of content stores, This is accomplished in Broberg I at Column 4, which says that requests are sent to a media content server 104. Content is streamed from a content distribution network, Column 6.

39. The Accused Services meet the limitation of initiating the programmed audio music playlist session by initiating the transmission of the content items described by the programmed audio music playlist session from the plurality of content stores to a streaming server. This is found in Broberg I, Column 5, Figure 1. A media content server provides multiple client devices.

40. The Accused Services meet the limitation of streaming the music content items described by the programmed audio music playlist session from the streaming server to the recipient devices, executing the software application on one of the recipient devices in a recipient mode, the software application configured to, only on the recipient devices, receive the programmed audio music playlist session, This information is identified in MBW, line 44, " Playlist management is limited to the host…" Also, per Broberg I, Column 1, a master device controls playback of media content. Per Columns 5-6, a content server establishes shared playback session for multiple client devices.

41. The Accused Services meet the limitation of identifying the programmed audio music playlist session from the recipient device, selecting the programmed audio music playlist session from the recipient device, receiving the substantially live relay of the content items described by the programmed audio music playlist session at a recipient device from the streaming server. Broberg I

1  says in Column 5, a content server establishes a shared playback session for
2  multiple client devices.

3      42.    The Accused Services meet the limitation of receiving an
4  authorization request from the software application executing on the host device,
5  the authorization request specifying a redirect location. See Broberg I, column 4:
6  For example, client devices 102-1, 102-2, and 102-m send media control requests
7  (e.g., requests to play music, movies, videos, or other media items, or playlists
8  thereof) to media content server 104 through network(s) 112.

9      43.    The Accused Services meet the limitation of generating a user login
10 prompt in response to the receipt of the authorization request, receiving user login
11 information from a user of the host device through the user login prompt.  Broberg
12 I, Columns 8-9: In some embodiments, media application 222 also includes…:…a
13 user profile module 232 for generating and/or storing information about a user of
14 the client device……a permissions module 316 for generating and/or storing
15 permissions and access (e.g., control) rights for user including: a user profile
16 module 318 for storing a profile of a user associated with client devices and
17 generating and/or storing the associated permission and access rights for each user
18 profile. Broberg 1, Column 12:  In some embodiments, the permissions of each
19 respective device (e.g.. the user associated with each device) is stored at media
20 content server 104 (e.g., in permissions module 316). Broberg 1, Column 15: In
21 some embodiments…the session master 402 determines whether the user that is
22 associated with observer device 406-1 is granted authorization to complete the
23 requested action…(e.g., based on a profile of the user, such as whether the user is
24 a premium/paid user or a free user). Broberg 1, Column 16: In some embodiments,
25 the first client device has limited permissions. For example, the host of the shared
26 playback session is not a user with a premium account and does not have
27 permission to take certain actions (e.g., and thus cannot request specific songs,
28 and/or pause media content, etc.).

ROBERT P. COGAN, ESQ.
CONTINUUM LAW
402 W Broadway Suite 400
San Diego, CA 92101

44. The Accused Services meet the limitation of generating both an access token and an authorization code only in response to validating the received user login information, providing the authorization code to the redirect location, (Broberg 1, Column 4) In some embodiments, client devices 102-1, 102-2 and 102-m, receive authentication tokens from the media content server 104 through network(s) 112.

Broberg II, Column 16: In some embodiments…the server system 104 provides (at operation 314) a token that authorizes the third electronic device to join (e.g., a so-called join token).

Broberg II, Column 22 The media application 622 may include…an authentication module 624 for…generating authentication tokens for media presentation systems associated with client device 102…

Broberg II, Columns 23-24: In some embodiments, memory 706…stores…a sharing module 718 for performing various functions with respect to receiving and granting permissions to access a shared listening session; …a token module 722 for generating authentication tokens permitting use of media presentation systems 108…

45. The Accused Services meet the limitation of receiving an access request from the software application executing on the host device, providing the access token to the software application executing on the host device only in response to the access request comprising the authorization code, and … Broberg II, Column 19: In some embodiments, the second request to join the first listening session…further includes (520) an indication that the third electronic device is authorized to access the first electronic device's shared listening sessions (e.g., a so-called "join token"). Broberg II, Column 22: The media application 622 may include…an authentication module 624 for sending authentication tokens corresponding to one or more media presentation systems associated with client device 102…, receiving authentication tokens from other devices… Broberg II,

Columns 23-24: In some embodiments, memory 706…stores…a sharing module 718 for performing various functions with respect to receiving and granting permissions to access a shared listening session; …a token module 722 for generating authentication tokens permitting use of media presentation systems 108 and for verifying that an authentication token is valid (e.g., has not yet expired or has not yet been revoked)…

46.     The Accused Services meet the limitation of providing data associated with the streaming of the music content to the software application executing on the host device only in response to requests from the software application executing on the host device that comprise the access token.  Broberg II, Columns 23-24: In some embodiments, memory 706…stores…: …one or more server application modules 714 for performing various functions with respect to providing and managing a content service…including: …a sharing module 718 for performing various functions with respect to receiving and granting permissions to access a shared listening session; …a token module 722 for…verifying that an authentication token is valid (e.g., has not yet expired or has not yet been revoked)…

### VIII. JURY DEMAND

Plaintiff respectfully demands a jury trial on all issues and claims so triable.

### IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court enter judgment in its favor and grant the following relief against Spotify:

   a) Judgment that Spotify infringed and continues to infringe the Asserted Patent;

   b) Award Plaintiff damages in an amount adequate to compensate Plaintiff for the infringement of the Asserted Patent by Spotify, but in no event

1  less than a reasonable royalty under 271284;

2  c) Award Plaintiff pre-judgment and post-judgment interest to the full extent

3  allowed under the law;

4  d) Award Plaintiff costs;

5  e) Enter an order finding this to be an exceptional case and award Plaintiff

6  reasonable attorney's fees pursuant to 35 U.S.C. § 285;

7  f) Order an accounting of damages; and

8  g) Award such other relief as the Court may deem appropriate and just under

9  the circumstances.

11  Dated: August 1, 2024

Respectfully submitted,

/s/ *Robert P. Cogan*

Robert P. Cogan , Bar No. 225193
rcogan@continuumlaw.com
CONTINUUM LAW
402 W. Broadway, Suite 400
San Diego, CA 92101
Tel: (858) 338-0400
Fax: (858) 259-5200

*Attorney for Plaintiff*
*Bluejay Technologies Limited*

ROBERT P. COGAN, ESQ.
CONTINUUM LAW
402 W Broadway Suite 400
San Diego, CA 92101

COMPLAINT
PAGE 12 OF 12